FILED

12/15/2020

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 18-0190

DA 18-0190

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2020 MT 309

STATE OF MONTANA,

        Plaintiff and Appellee,

   v.

KENT RODERICK JENSEN,

        Defendant and Appellant.

APPEAL FROM:    District Court of the Thirteenth Judicial District,
In and For the County of Yellowstone, Cause No. DC 16-0701
Honorable Gregory R. Todd, Presiding Judge

COUNSEL OF RECORD:

       For Appellant:

          Chad Wright, Appellate Defender, Danny Tenenbaum, Assistant Appellate
Defender, Helena, Montana

       For Appellee:

          Timothy C. Fox, Montana Attorney General, Tammy K Plubell, Assistant
Attorney General, Helena, Montana

          Scott D. Twito, Yellowstone County Attorney, Victoria Callender, Deputy
County Attorney, Billings, Montana

Submitted on Briefs:  October 28, 2020

Decided:  December 15, 2020

Filed:

_____
Clerk

Justice Ingrid Gustafson delivered the Opinion of the Court.

¶1    Kent Rodrick Jensen appeals the July 24, 2017 Order of the Thirteenth Judicial District Court, Yellowstone County, denying his motion to dismiss the charge of Vehicular Homicide While Under the Influence, a felony, pursuant to §§ 45-5-106 and 61-8-411, MCA.  Jensen contended the charge against him should have been dismissed because § 61-8-411, MCA, violates the substantive due process guarantee of the 14th Amendment to the United States Constitution and Article 2, Section 17, of the Montana Constitution and is facially unconstitutional.  On appeal, Jensen argues the statute violates both the substantive due process and equal protection guarantees of the State and federal constitutions.  We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶2    On November 7, 2016, Jensen spent the day hanging out and smoking marijuana at friend's house.  As evening approached, Jensen decided to drive to Subway to get a sandwich.  On his return trip, Jensen collided with a motorcycle while making a left turn. The driver of the motorcycle was pronounced dead at the scene from multiple blunt force injuries caused by the crash.

¶3    Montana Highway Patrol Trooper Munson was the responding officer.  At the scene, Munson read Jensen the Montana Implied Consent Advisory and requested a blood draw. Jensen consented.  The results showed 19 nanograms per milliliter of THC—the major psychoactive component found in marijuana—in his bloodstream.

¶4 On July 15, 2016, the Yellowstone County Attorney's Office charged Jensen with Vehicular Homicide While Under the Influence pursuant to § 45-5-106, MCA. The State alleged Jensen was impaired, citing § 61-8-411, MCA, which makes operating a motor vehicle with a THC level above 5 nanograms per milliliter a per se violation.

¶5 The Montana Legislature enacted § 61-8-411, MCA, in 2013. During committee hearings on the bill, a lab technician from the Montana State Crime Lab testified and provided committee members with a fact sheet, citing several scientific studies that indicated THC levels in a person's blood would likely decrease rapidly after smoking marijuana and higher THC levels lead to an increased risk of an accident.

¶6 On January 31, 2017, Jensen filed a motion to dismiss the charges, arguing § 61-8-411, MCA, was facially unconstitutional as a violation of his right to substantive due process. The court held an evidentiary hearing on the motion on June 2, 2017. Jensen called Dr. Robert Lantz, the director of Rocky Mountain Instrumental Laboratories in Fort Collins, Colorado, to testify as an expert witness. Dr. Lantz specializes in toxicology and analytical chemistry. Dr. Lantz testified the latest research on marijuana has found no correlation between the concentration of THC in the bloodstream and impairment. He testified the 5 nanogram limit found in § 61-8-411, MCA, is not an accurate representation of a level for impairment, explaining that unlike blood alcohol concentration, "[t]here is a lot of variability person to person." He explained marijuana metabolizes in the body much differently than alcohol, leading to some routine users of marijuana being fully functional despite having THC blood concentration levels between 10 and 20 nanograms per

3

milliliter. Dr. Lantz explained it was not possible to determine how impaired a person is by the active THC level in the bloodstream. Several studies Dr. Lantz relied on were submitted into the record. Dr. Lantz also faulted the studies cited in the fact sheet provided to the 2013 Montana Legislature. He testified the fact sheet was incorrect about the levels of THC in the bloodstream of routine marijuana users and the study correlating higher THC levels and increased risk of an accident relied on the unadjusted odds ratio and when adjusted to account for demographics, the correlation disappears. Dr. Lantz concluded using a 5 nanogram per milliliter level of THC standard to trigger a per se violation was scientifically unsupported. The State called Jon Bennion, a lawyer from the Attorney General's office, to testify. Bennion explained how the Attorney General decides when to comment on a bill and the general legislative history of House Bill 168, now codified as § 61-8-411, MCA, during the 2013 legislative session, which passed with little opposition and strong bipartisan support.

¶7 Both parties filed supplemental briefing after the hearing. On July 24, 2017, the District Court denied Jensen's motion to dismiss. The District Court acknowledged "the scientific community has so far struggled with finding an accurate and scientifically sound method of *measuring* level of impairment through THC levels" but "per se or zero tolerance laws send a message that there is a public safety concern about the practice of drug use and driving, and set an objective standard for what constitutes the offense." (Emphasis in original and internal quotations omitted.) The court found the statute's

4

5 nanogram per milliliter limit was "a reasonable, rational and effective means of accomplishing" the objective of "curtailing the ingestion of THC before or during driving."

¶8 Jensen pleaded guilty to the charge pursuant to a plea agreement and reserved his right to appeal the District Court's denial of his motion to dismiss. The District Court sentenced Jensen to the Department of Corrections for 25 years with 20 years suspended.

## STANDARD OF REVIEW

¶9 The district court's denial of a motion to dismiss in a criminal case presents a question of law this Court reviews for correctness. *State v. Davis*, 2016 MT 102, ¶ 8, 383 Mont. 281, 371 P.3d 979. This Court exercises plenary review of constitutional issues. *Davis*, ¶ 8. The constitutionality of a statute is presumed, and the party challenging the constitutionality of a statute bears the burden of proving the statute conflicts with the constitution beyond a reasonable doubt. *Mont. Cannabis Indus. Ass'n v. State*, 2016 MT 44, ¶ 12, 382 Mont. 256, 368 P.3d 1131. "If any doubt exists, it must be resolved in favor of the statute." *Mont. Cannabis Indus. Ass'n*, ¶ 12.

## DISCUSSION

¶10 Jensen argues the charge against him must be dismissed because § 61-8-411, MCA, upon which his vehicular homicide while under the influence charge is based, violates the substantive due process and equal protection guarantees of the State and federal constitutions. Jensen argues the 5 nanogram per milliliter limit in § 61-8-411, MCA, does not correlate with impairment and has no scientific basis. Further, he argues it discriminates unfairly against routine marijuana users who will have more than

5

5 nanograms per milliliters of THC in their blood even when they have not used recently and are not impaired.

¶11 Section 45-5-106, MCA, provides: "A person commits the offense of vehicular homicide while under the influence if the person negligently causes the death of another human being while the person is operating a vehicle in violation of [§§] 61-8-401, 61-8-406, or 61-8-411 [MCA]." Section 61-8-411, MCA, under which Jensen was charged, provides, in relevant part: "It is unlawful . . . for any person to drive or be in actual physical control of . . . a noncommercial vehicle upon the ways of the state open to the public while the person's delta-9-tetrahydrocannabinol level, excluding metabolites, as shown by analysis of the person's blood, is 5 ng/ml or more."

¶12 To prevail on a facial challenge, the party challenging the statute must show that "no set of circumstances exists under which the [challenged statute] would be valid, i.e., that the law is unconstitutional in all of its applications" or that the statute lacks any "plainly legitimate sweep." *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190 (2008) (internal quotations omitted); *see also In re S.M.*, 2017 MT 244, ¶ 10, 389 Mont. 28, 403 P.3d 324; *Mont. Cannabis Indus. Ass'n*, ¶ 14. This is a high burden to meet, and Jensen fails to do so here.

*Substantive Due Process*

¶13 "[D]ue process 'emphasizes fairness between the State and the individual dealing with the State, regardless of how other individuals in the same situation may be treated.'" *Mont. Cannabis Indus. Ass'n*, ¶ 19 (quoting *Evitts v. Lucey*, 469 U.S. 387, 405, 105 S. Ct.

6

830, 841 (1985)). "The theory underlying substantive due process reaffirms the fundamental concept that the due process clause contains a substantive component which bars arbitrary governmental actions regardless of the procedures used to implement them, and serves as a check on oppressive governmental action." *Newville v. Mont. Dep't of Family Servs.*, 267 Mont. 237, 249, 883 P.2d 793, 801 (1994).

¶14 "Laws regulating property or liberty that do not restrict the exercise of a fundamental right should be upheld unless the person attacking the law can overcome the presumption of constitutionality and demonstrate that the law is not rationally related to a legitimate interest." *Mont. Cannabis Indus. Ass'n*, ¶ 20 (quoting 2 Ronald D. Rotunda & John E. Nowak, *Treatise on Constitutional Law: Substance and Procedure* § 15.5, 847-48 (5th Ed. 2012)). Thus "[w]here a fundamental right is not implicated, '[s]ubstantive due process analysis requires a test of the reasonableness of a statute in relation to the State's power to enact legislation.'" *Mont. Cannabis Indus. Ass'n*, ¶ 21 (quoting *Satterlee v. Lumberman's Mut. Cas. Co.*, 2009 MT 368, ¶ 33, 353 Mont. 265, 222 P.3d 566); *see also Powell v. State Compensation Ins. Fund*, 2000 MT 321, ¶ 29, 302 Mont. 518, 15 P.3d 877; *Newville*, 267 Mont. at 250, 883 P.2d at 801. "Since the State cannot use its power to take an unreasonable, arbitrary or capricious action against an individual, a statute enacted by the legislature must be reasonably related to a permissible legislative objective in order to satisfy guarantees of substantive due process." *Satterlee*, ¶ 33 (quoting *Powell*, ¶ 29). This rational basis standard is the most deferential standard of review. *See Mont. Cannabis Indus. Ass'n*, ¶ 26. The due process clause does not require a statute to "be in every respect

logically consistent with its aims to be constitutional." *Mont. Cannabis Indus. Ass'n*, ¶ 26 (quoting *Williamson v. Lee Optical of Okla., Inc.*, 348 U.S. 483, 487-88, 75 S. Ct. 461, 464 (1955)).

¶15    Jensen emphasizes the research his expert presented repeatedly concludes there is no scientifically sound way to predict impairment based on the concentration of THC in the bloodstream and the State did not contest this evidence.  Jensen argues the District Court conflated THC concentration with recent marijuana use, ignoring the scientific consensus that the former does not correlate with the latter.  Jensen argues § 61-8-411, MCA, allows the State to convict a person of driving under the influence simply for being a routine marijuana user, regardless of their impairment, and fails to capture novice users whose blood concentration may fall below 5 nanograms per milliliter even though they remain impaired.  Jensen concludes the 5 nanogram per milliliter limit does not address the Legislature's legitimate concerns about drug-impaired driving.

¶16    Jensen does not contest the State has a compelling interest in keeping unsafe, drug-impaired drivers off the road.  *See, e.g., State v. Pyette*, 2007 MT 119, ¶ 27, 337 Mont. 265, 159 P.3d 232.  Jensen's arguments boil down to whether the legislature could have made a more scientifically based policy choice to keep drivers impaired by THC off the road.  But a debate of the issues involved and decisions regarding public policy are clearly better suited to the halls of the legislature.  *See Satterlee*, ¶ 38.  "Our role is not to second guess the prudence of a legislative decision." *Satterlee*, ¶ 34.  While THC concentration in the blood may not directly correlate to the level of impairment experienced by the

8

marijuana user, it does indicate prior marijuana use, and Jensen does not dispute marijuana has psychoactive effects on the user, which do cause temporary impairment. As the District Court explained, "[t]he legislature has the responsibility to pass laws that provide for the general welfare notwithstanding the absence of a perfect measuring method." The 5 nanogram per milliliter limit is not irrational, especially given that driving is a privilege, not a right, *see State v. Michaud*, 2008 MT 88, ¶ 58, 342 Mont. 244, 180 P.3d 636, and the compelling interest of the State in preventing drug-impaired driving. As the United States Supreme Court has explained, "a legislative choice is not subject to courtroom factfinding and may be based on rational speculation unsupported by evidence or empirical data." *FCC v. Beach Commc'ns*, 508 U.S. 307, 315, 113 S. Ct. 2096, 2102 (1993). Thus, "[w]hile a different scheme would have been permissible, the legislature's policy choice in this instance is not constitutionally invalid." *Ward v. Johnson*, 2012 MT 96, ¶ 24, 365 Mont. 19, 277 P.3d 1216. Section 61-8-411, MCA, is rationally related to the government's compelling interest in keeping drug-impaired and unsafe drivers off the road.

*Equal Protection*

¶17    "Equal protection 'emphasizes disparity in treatment by a State between classes of individuals whose situations are arguably indistinguishable.'" *Mont. Cannabis Indus. Ass'n*, ¶ 19 (quoting *Evitts*, 469 U.S. at 405, 105 S. Ct. at 841). In the absence of a suspect classification or fundamental interest, the contested state action is subject to a rational basis test. *Goble v. Mont. State Fund*, 2014 MT 99, ¶ 35, 374 Mont. 453, 325 P.3d 1211. Under

9

a rational basis test, we will uphold the statute if it bears a rational relationship to a legitimate governmental interest. *Goble*, ¶ 36.

¶18 Jensen argues the 5 nanogram per se limit imposes a peculiar disability on drivers who routinely use marijuana, which it does not impose on drivers who irregularly use marijuana. He argues this distinction violates equal protection because is it not based on reasonable consideration of differences between drivers who use marijuana.

¶19 Jensen did not raise his equal protection challenge in the District Court. We generally will not consider arguments raised for the first time on appeal. *State v. Carter*, 2005 MT 87, ¶ 13, 326 Mont. 427, 114 P.3d 1001. This Court can affirm the District Court's order on that basis alone. We note, however, that the statute does not create any classifications. It uniformly prohibits conduct for all drivers—operating a motor vehicle with 5 or more nanograms per milliliter of THC in one's bloodstream. Further, as discussed above, the statute bears a rational relationship to a compelling governmental interest and passes rational basis review.

**CONCLUSION**

¶20 The District Court is affirmed.

/S/ INGRID GUSTAFSON

We concur:

/S/ MIKE McGRATH
/S/ JAMES JEREMIAH SHEA
/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR
/S/ JIM RICE

10