FILED

03/17/2026

Bowen Greenwood
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 23-0305

DA 23-0305

IN THE SUPREME COURT OF THE STATE OF MONTANA

2026 MT 52

STATE OF MONTANA,

    Plaintiff and Appellee,

    v.

NEIL DENNIS COLE,

    Defendant and Appellant.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DC-20-349
Honorable Leslie Halligan, Presiding Judge

COUNSEL OF RECORD:

    For Appellant:

        Tammy A. Hinderman, Appellate Defender Division Administrator,
Deborah S. Smith, Assistant Appellate Defender, Helena, Montana

    For Appellee:

        Austin Knudsen, Montana Attorney General, Cori Losing, Assistant
Attorney General, Helena, Montana

        Matthew Jennings, Missoula County Attorney, Brielle Lande, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs:  July 30, 2025

Decided:  March 17, 2026

Filed:

_____
Clerk

Justice James Jeremiah Shea delivered the Opinion of the Court.

¶1 Neil Dennis Cole appeals the fine imposed for his April 6, 2023 conviction for driving under the influence (DUI), fourth or subsequent offense, entered in the Fourth Judicial District Court, Missoula County. After determining that Cole did not have the ability to pay the $5,000 mandatory fine, the District Court suspended $4,900 of it "based on his successful completion of the conditions of probation" and "continued good compliance." We restate and address the following issue:

> *Whether the District Court legally imposed the $5,000-minimum fine mandated by § 61-8-731(1)(a)(iii), MCA (2019), when it suspended the portion Cole could not pay.*

¶2 We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

¶3 In July 2020, Cole was charged with one count of felony DUI in violation of § 61-8-401(1)(a), MCA (2019) (current version at § 61-8-1002(1)(a), MCA). After unsuccessfully attempting to get Cole into Treatment Court, Cole and the State reached a global plea agreement which disposed of this case and another case. In exchange for Cole pleading guilty to felony DUI as charged in the Information, the State dismissed the other case with prejudice. The State and Cole agreed to jointly recommend that Cole receive a 13-month commitment to the Department of Corrections (DOC), with a recommendation for placement in the WATCh program, followed by a 5-year suspended DOC commitment. The State and Cole also agreed that the court could impose the mandatory minimum fine of $5,000.

2

¶4      At the sentencing hearing on March 15, 2023, defense counsel requested that the court strike the fine based on Cole's inability to pay. The court inquired into Cole's financial situation. Cole, who was not sure of his age but believed he was 66 years old, said he had not bought any food for the month and had been waiting for two and one-half years for subsidized housing. He hoped to be accepted into Clark Fork Riverside housing when he finished WATCh. Cole receives $1,643 a month from Social Security and pays $300 a month for auto insurance and two storage units. The State did not object to the court's inquiry, nor did it argue that Cole must pay the fine. The District Court imposed the $5,000 fine but gave Cole $100 credit for a day spent in jail and then suspended the remaining $4,900 balance. The District Court stated that the balance would remain suspended if Cole continued to be in good compliance with the conditions of his probation. The District Court's April 6, 2023 written judgment reflects that Cole was ordered to pay $0 of the mandatory minimum fine.

**STANDARDS OF REVIEW**

¶5      We review criminal sentences for legality. *State v. Yang*, 2019 MT 266, ¶ 8, 397 Mont. 486, 452 P.3d 897. To determine legality, we consider only "whether the sentence falls within the statutory parameters, whether the district court had statutory authority to impose the sentence, and whether the district court followed the affirmative mandates of the applicable sentencing statutes." *State v. Yeaton*, 2021 MT 312, ¶ 8, 406 Mont. 465, 500 P.3d 583 (quoting *State v. Ingram*, 2020 MT 327, ¶ 8, 402 Mont. 374, 478 P.3d 799). Claims that a criminal sentence violates a constitutional provision are reviewed de novo.

*Yang*, ¶ 8. Our review of constitutional questions is plenary. *State v. Johnson*, 2018 MT 277, ¶ 10, 393 Mont. 320, 430 P.3d 494.

**DISCUSSION**

¶6 *Whether the District Court legally imposed the $5,000-minimum fine mandated by § 61-8-731(1)(a)(iii), MCA (2019), when it suspended the portion Cole could not pay.*

¶7 Cole challenges the District Court's statutory authority to impose a suspended $5,000 mandatory minimum fine pursuant to § 61-8-731(1)(a)(iii), MCA (2019) (current version at § 61-8-1008(1)(a)(i), MCA), when the District Court determined that he lacked the ability to pay the fine. Cole argues that by requiring a mandatory minimum fine regardless of the defendant's ability to pay, § 61-8-731(1)(a)(iii), MCA (2019), is facially unconstitutional under the Excessive Fines clauses of the United States and Montana constitutions, like the mandatory minimum fine struck down in *State v. Gibbons*, 2024 MT 63, 416 Mont. 1, 545 P.3d 686, *cert. denied*, 145 S. Ct. 355 (2024). Cole contends that because *Gibbons* bars the imposition of a fine he could not pay at the time of sentencing, suspension of the fine cannot cure its constitutional infirmity. The State argues that *Gibbons* should be overruled as manifestly wrong.[1]

---

[1] The State also argues that Cole waived appellate review of this issue by agreeing to the $5,000 fine in his plea agreement and that *Gibbons* is inapplicable to Cole's fine because Cole was sentenced for a fourth-offense DUI pursuant to § 61-8-731(1)(a), MCA (2019), whereas Gibbons was sentenced for a fifth-offense DUI pursuant to § 61-8-731(3), MCA (2019). Because we are holding that the District Court did not err by imposing the mandatory minimum fine and suspending all but $100 of it based on Cole's inability to pay, we decline to address the State's alternative arguments.

¶8 In *Gibbons*, this Court held that the $5,000 mandatory minimum fine prescribed by § 61-8-731(3), MCA (2019) (current version at § 61-8-1008(2), MCA), was facially unconstitutional "to the extent that whenever the sentencing judge imposes a fine, the statute does not allow the judge to consider, before imposing the $5,000 mandatory minimum, the proportionality factors protecting an offender from excessive fines." *Gibbons*, ¶¶ 51, 66. To reach the constitutional issue, the Court found that the mandatory minimum fine required by § 61-8-731(3), MCA (2019), and the ability-to-pay inquiry mandated by § 46-18-231(3), MCA (2019), were irreconcilable. *Gibbons*, ¶ 56. The Court reasoned that § 61-8-731(3), MCA (2019), eliminated a judge's authority to modify the mandatory minimum fine and required the "full $5,000 fine every time a fine is imposed" regardless of the defendant's ability to pay. *Gibbons*, ¶¶ 51-53.

¶9 The dispositive issue in Cole's appeal addresses *Gibbons*'s perceived lack of statutory authority. *Gibbons* did not present us with the issue now before us: the implication of a sentencing court's statutory authorization to *suspend* all or part of a mandatory fine consistent with the defendant's ability to pay. Both Cole and the State concede that a sentencing court retains the authority to suspend a mandatory minimum fine, pursuant to § 46-18-201(2), MCA (2019), and our holding in *City of Whitefish v. Curran*, 2023 MT 118, ¶ 27, 412 Mont. 499, 531 P.3d 547. Cole's sentencing process demonstrates precisely how the sentencing provisions can be harmonized to allow a sentencing court to fulfill its statutory obligations to consider a defendant's ability to pay a fine, impose the

5

minimum fine, but then suspend the portion of that fine that it determines the defendant is unable to pay.

¶10 Sentencing authority "exists solely by virtue of a statutory grant of power and therefore cannot be exercised in any manner not specifically authorized." *State v. Lenihan*, 184 Mont. 338, 342, 602 P.2d 997, 1000 (1979) (citation omitted). This inquiry is governed by our accepted rules of statutory construction, which "require us to reconcile statutes if it is possible to do so in a manner consistent with legislative intent." *Ross v. City of Great Falls*, 1998 MT 276, ¶ 19, 291 Mont. 377, 967 P.2d 1103; *see also* § 1-2-101, MCA (requiring a construction of multiple statutory provisions "as will give effect to all," if such construction is possible). Because statutes are presumed to be constitutional, we must construe statutes "in a manner to avoid their unconstitutionality." *State v. Smith*, 2021 MT 148, ¶ 56, 404 Mont. 245, 488 P.3d 531; *accord State v. Heath*, 2004 MT 126, ¶ 35, 321 Mont. 280, 90 P.3d 426 (interpreting legislative amendments to avoid facial conflict with Article II, Section 28, of the Montana Constitution). We must interpret multiple statutory requirements "in the context of holistic statutory schemes 'to pursue the Legislature's intent and to avoid an absurd result.'" *Curran*, ¶ 25 (quoting *State v. Lodahl*, 2021 MT 156, ¶ 16, 404 Mont. 362, 491 P.3d 661). Even when specific and general statutes apparently conflict, "this Court must harmonize statutes relating to the same subject, as much as possible, giving effect to each." *Oster v. Valley County*, 2006 MT 180, ¶¶ 17-18, 333 Mont. 76, 140 P.3d 1079.

¶11 Three provisions of the Legislature's criminal sentencing scheme shape the District Court's authority to impose a suspended fine on Cole. Section 61-8-731(1)(a)(iii), MCA (2019), establishes that a person convicted of a fourth-offense DUI "shall be punished" by a fine in the range of $5,000 to $10,000. The Legislature's "clear purpose and intent" under § 61-8-731, MCA, was to impose a heightened financial penalty for felony DUIs, including fourth-offense DUIs. *See Gibbons*, ¶ 56 n.3. Section 46-18-231, MCA (2019), requires that "whenever" an offender has been found guilty of a felony, including a fourth-offense DUI, the court "shall" consider the offender's financial resources and the burden imposed by paying the fine. *Gibbons*, ¶ 45. Section 46-18-231(3), MCA (2019), prohibits the judge from sentencing an offender to pay a fine "unless the offender is or will be able to pay" it. The plain language of § 46-18-231, MCA (2019), makes "no exceptions for statutes that establish a minimum mandatory fine." *Gibbons*, ¶ 45; *Gibbons*, ¶ 71 (Shea, J., concurring in part and dissenting in part). Finally, § 46-18-201(2), MCA (2019), expressly authorizes a sentencing judge to "suspend execution of [a] sentence," unless "specifically provided by statute." *See Curran*, ¶¶ 25, 27 (recognizing sentencing court's "discretion to suspend . . . the mandatory . . . fine"). Section 61-8-731(1)(a)(iii), MCA (2019), does not specifically provide that a court may not suspend the mandatory fine for a fourth-offense DUI; therefore, the sentencing court's authority under § 46-18-201(2), MCA (2019), remains intact.

¶12 The Dissent asserts that *Curran* does not apply in this case because it did not "purport[] to expand judicial authority to alter the Legislature's mandatory fine scheme."

7

Dissent, ¶ 20. But *Curran* did not have to expand judicial authority to suspend a mandatory minimum fine, as the Legislature's holistic sentencing scheme created such authority. *Curran*, ¶¶ 25-27 (discussing sentencing court's authority to "suspend execution of sentence" pursuant to § 46-18-201(2), MCA, alongside judicial authority to order an alternative method of payment pursuant to § 46-18-201(3)(b), MCA). Curran asked the Municipal Court to entirely suspend his fine due to his inability to pay, and we held that the Municipal Court abused its discretion by holding that it lacked the statutory authority to do so. *Curran*, ¶¶ 3-4, 26-27. Section 46-18-201(2), MCA (2019), provides the sentencing court with the discretion to suspend that portion of the fine that the defendant lacks the ability to pay. *Curran*, ¶¶ 25, 27.

¶13 Because it is possible to give effect to each of the three sentencing provisions consistent with the Legislature's intent, we must adopt a construction that does so. If a defendant is convicted of a fourth-offense DUI, the sentencing court must impose a fine between $5,000 and $10,000. Section 61-8-731(1)(a)(iii), MCA (2019). When determining the amount of the fine, the sentencing court is equally mandated to consider the defendant's ability to pay and is prohibited from requiring the defendant to pay a fine that is beyond the defendant's ability to pay. Section 46-18-231(3), MCA (2019). Section 46-18-201(2), MCA (2019), provides the mechanism by which the sentencing court can comply with both mandatory requirements: express authorization to suspend the portion of the fine the defendant cannot pay. Harmonizing the three provisions gives effect to the Legislature's intent to establish a heightened monetary penalty for felony DUIs while

8

ensuring that such a penalty does not create a disproportionate burden on indigent offenders by requiring the sentencing court to determine the defendant's ability to pay the fine and allowing it to suspend all or part of the fine consistent with that determination. *See Ross*, ¶ 19.[2]

¶14  In practice, giving effect to each provision results in the following sentencing process. While the sentencing court must impose a fine within the mandatory range prescribed by § 61-8-731(1)(a)(iii), MCA (2019), it "*shall* take into account the nature of the crime committed, the financial resources of the offender, and the nature of the burden that *payment* of the fine will impose," as required by § 46-18-231(3), MCA (2019) (emphasis added). If the sentencing court determines that the defendant is or will be unable to pay the full mandatory minimum fine, then the court must use its authority under § 46-18-201(2), MCA (2019), to suspend the mandatory fine to the extent that the defendant lacks the ability to pay.

¶15  Harmonizing these three sentencing provisions avoids the unconstitutional construction of § 61-8-731(1)(a)(iii), MCA (2019), that this Court applied to § 61-8-731(3), MCA (2019), in *Gibbons*. This approach recognizes the sentencing court's equal statutory obligation to both impose the $5,000-miminum fine *and* suspend any

---

[2] This construction also effectuates the Legislature's intent that § 46-18-231(3), MCA, apply to all fines by authorizing the judge to incorporate the required ability-to-pay analysis into the sentence. The "law neither does nor requires idle acts." Section 1-3-223, MCA. Section 46-18-231(3), MCA, requires courts in all felony and misdemeanor cases to consider the offender's financial resources, among other proportionality factors, before requiring them to pay a fine. Conducting such an analysis before imposing an ostensibly mandatory minimum fine would be a quintessential "idle act" if the court had no ability to suspend the fine according to the offender's ability to pay.

portion of that fine that the defendant is unable to pay. Contrary to the Dissent's characterization of this approach as "judicial revision" of the mandatory fine imposed pursuant to § 61-8-731(1)(a)(iii), MCA (2019), Dissent, ¶ 46, it actually applies the *complete* statutory framework provided by the Legislature and, in so doing, ensures that indigent defendants cannot be required to pay a fine that they lack the ability to pay. By giving effect to each sentencing provision, we preserve the Legislature's intent in creating a heightened financial penalty for felony DUIs while achieving the same practical effect as *Gibbons*: Cole cannot be required to pay any portion of the fine he is unable to pay. Because the reconciled sentencing provisions authorize the sentencing judge to consider the defendant's ability to pay and suspend the fine accordingly, we avoid construing § 61-8-731(1)(a)(iii), MCA (2019), as facially unconstitutional. *See Smith*, ¶ 56.

¶16 Cole relies on *Gibbons*'s constitutional holding and perpetuates its erroneous statutory construction that a mandatory minimum DUI fine is irreconcilable with § 46-18-231(3), MCA (2019), to support his request that we strike the suspended $5,000 fine from his sentence. Cole argues that even if the District Court has discretionary authority to suspend enforcement of authorized fines under *Curran*, the District Court lacked statutory authority to impose a fine pursuant to a statute that is facially unconstitutional, as this Court held in *Gibbons*. In fact, § 46-18-231(3), MCA (2019), uses neither the words "impose" nor "enforce." It provides in relevant part:

> The sentencing judge may not sentence an offender to *pay* a fine unless the offender is or will be able to *pay* the fine. In determining the amount and method of *payment*, the sentencing judge shall take into account . . . the

10

financial resources of the offender, and the nature of the burden that *payment* of the fine will impose.

Section 46-18-231(3), MCA (2019) (emphasis added). A defendant does not "pay" a suspended fine. The very purpose of suspending a fine in recognition of a defendant's inability to pay the fine is to ensure that payment will not burden the defendant to a degree beyond their ability, as required by § 46-18-231(3), MCA (2019). Nor would an indigent defendant be forced to worry about being unable to pay the suspended balance upon revocation, as § 46-18-231(3), MCA (2019), prohibits requiring payment as long as the defendant remains unable to pay the fine. Although we have not considered the application of § 46-18-231(3), MCA, in revocation proceedings, we have applied the virtually identical language from § 46-8-113(3), MCA (2003) (current version at § 46-8-113(4), MCA), in a revocation proceeding. *State v. Rudolph*, 2005 MT 41, ¶¶ 21-22, 326 Mont. 132, 107 P.3d 496 (holding the district court erred by ordering the defendant to pay legal expenses incurred during a revocation proceeding without considering his financial resources and ability to pay), *overruled in part on other grounds by State v. Tirey*, 2010 MT 283A, 358 Mont. 510, 247 P.3d 701.

¶17 The Dissent echoes Cole's assertion that the mandatory minimum fine required by § 61-8-731(1)(a)(iii), MCA (2019), is facially unconstitutional and that this constitutional defect cannot be rectified by subsequent suspension of the fine. A statute is facially unconstitutional when "no set of circumstances exists under which the [statute] would be valid, i.e., that the law is unconstitutional in all of its applications" or "the statute lacks any 'plainly legitimate sweep.'" *State v. Jensen*, 2020 MT 309, ¶ 12, 402 Mont. 231, 477 P.3d

335 (en banc) (quoting *Wash. State Grange v. Wash. State Republican Party*, 552 U.S. 442, 449, 128 S. Ct. 1184, 1190 (2008)). The suspension of Cole's fine according to his inability to pay demonstrates the "set of circumstances under which" the imposition of the mandatory minimum DUI fine is constitutionally valid. While fining Cole the $5,000 mandatory minimum, the District Court also made the statutorily required determination of Cole's ability to pay and, based on that determination, suspended $4,900 of the fine, and credited him the remaining $100 for a day spent in jail. The District Court ordered Cole to *pay* $0, an amount that, by any metric, cannot be unconstitutionally excessive. The Dissent characterizes this as a "Sword of Damocles" hanging over Cole's head, punishing his indigency. Dissent, ¶ 48. But Cole's probation obviously cannot be revoked for failure to pay $0; and even in the event he violates a different condition of his probation, the District Court would still be constrained by his ability to pay any portion of the suspended fine in any future revocation proceeding. *See Rudolph*, ¶¶ 21-22. Rather than a Sword of Damocles, this is more akin to a sword safely ensconced in its scabbard that Cole will never even see so long as he remains indigent.

¶18 The District Court's suspension of Cole's fine in recognition of his inability to pay demonstrates the manifest error at the heart of *Gibbons*'s holding that the mandatory minimum fine in § 61-8-731(3), MCA (2019), is facially unconstitutional. *Gibbons* rejected an analogous statutory approach to harmonize § 61-8-731(3), MCA (2019), with § 46-18-231(3), MCA (2019), based on a perceived lack of judicial authority to require a defendant to pay a fine less than the mandatory minimum. *Gibbons*, ¶¶ 52-53. The

12

sentencing court's ability to suspend the portion of a fine that a defendant is unable to pay was not argued or at issue in *Gibbons*. This authority is now squarely before us, belying *Gibbons*'s conclusion that a sentencing court lacks statutory authority to modify a mandatory fine in consideration of the defendant's inability to pay.

¶19 We take seriously that "[v]ery weighty considerations underlie the principle that courts should not lightly overrule past decisions." *Allstate Ins. Co. v. Wagner-Ellsworth*, 2008 MT 240, ¶ 39, 344 Mont. 445, 188 P.3d 1042 (quoting *Moragne v. States Marine Lines, Inc.*, 398 U.S. 375, 403, 90 S. Ct. 1772, 1789 (1970)). Stare decisis is a "fundamental doctrine which reflects our concerns for stability, predictability and equal treatment." *State v. Gatts*, 279 Mont. 42, 51, 928 P.2d 114, 119 (1996) (quoting *Formicove, Inc. v. Burlington N., Inc.*, 207 Mont. 189, 194, 673 P.2d 469, 472 (1983)). Those involved in the legal system should have "some assurance that important legal principles involving their highest interests shall not be changed from day to day." *State v. Running Wolf*, 2020 MT 24, ¶ 21, 398 Mont. 403, 457 P.3d 218. But stare decisis "does not require us to perpetuate incorrectly-decided precedent," and we are "*obligated* to overrule precedent" where statutory construction is manifestly wrong. *City of Kalispell v. Salsgiver*, 2019 MT 126, ¶ 45, 396 Mont. 57, 443 P.3d 504 (quoting *ALPS Prop. & Cas. Ins. Co. v. McLean & McLean, PLLP*, 2018 MT 190, ¶ 30, 392 Mont. 236, 425 P.3d 651).

¶20 We do not take lightly the gravity of overturning a recent decision of this Court, and we will not revisit more than necessary to correct *Gibbons*'s manifestly wrong statutory construction. Although Cole portrays *Gibbons* as longstanding precedent, the decision is

less than two years old, and a majority of this Court has never reaffirmed its constitutional holding. In the several cases in which *Gibbons* was referenced, we have yet to squarely address this issue. *See State v. Marfuta*, 2024 MT 245, ¶ 20, 418 Mont. 353, 557 P.3d 1260 (citing standard of review); *State v. Bloomer*, 2025 MT 93, ¶ 5, 421 Mont. 481, 568 P.3d 513 (same); *State v. Dellar*, 2025 MT 111, ¶ 25, 422 Mont. 124, 569 P.3d 534 (quoting *Gibbons*'s initial statutory analysis before holding that district court properly considered defendant's ability to pay court-imposed fee); *State v. Alford*, 2025 MT 171, ¶ 20, 423 Mont. 269, 578 P.3d 611 (declining to extend *Gibbons*'s constitutional analysis of excessive fines to Cruel and Unusual Punishment Clause or mandatory minimum custodial sentences); *State v. Post*, 2025 MT 215, ¶¶ 7 n.2, 9-10, 424 Mont. 167, 576 P.3d 344 (en banc) (relying on statutory interpretation, not facial constitutional challenge, to reverse and remand district court's impermissible imposition of fine absent an ability-to-pay analysis).

¶21 We came closest to reviewing *Gibbons*'s constitutional holding in *State v. Vaska*, 2025 MT 168, 423 Mont. 194, 573 P.3d 327. While all seven Justices agreed in *Vaska* that the District Court should have conducted an ability-to-pay analysis before imposing a mandatory minimum fine pursuant to § 61-8-731(3), MCA (2019), *Vaska*, ¶ 31 (Shea, J., specially concurring), only a plurality applied *Gibbons*'s rationale that the mandatory minimum fine was facially unconstitutional, *Vaska*, ¶¶ 25-26 (plurality).[3]

---

[3] The Dissent characterizes our decision in *Vaska* as a "4-3 majority," Dissent, ¶ 31, when it was really a 3-3-1 decision. In specially concurring with the plurality opinion in *Vaska*, Justice Shea advocated that *Gibbons* should not be revisited in *Vaska* because the Court unanimously agreed the fine imposed should be vacated and remanded for the District Court to determine Vaska's ability to pay and until that determination was made on remand, Justice Shea observed that "these lofty debates of constitutional law and stare decisis are just theoretical disputes." *Vaska*, ¶¶ 30-31

14

¶22 The additional consideration of a sentencing court's statutory authorization to suspend all or part of a mandatory fine in consideration of the defendant's ability to pay compels us to conclude that our constitutional holding in *Gibbons* is manifestly wrong. We therefore overrule *Gibbons*'s holding that § 61-8-731(3), MCA (2019), is facially unconstitutional.

¶23 The Dissent criticizes this Opinion as "no more than the losing argument in *Gibbons*" that "demonstrates no manifest legal error" or "any intervening change in law or fact." Dissent, ¶ 41. Citing the *Vaska* plurality, the Dissent asserts that "*Gibbons* was the product of careful consideration, thorough reasoning, and comprehensive and deliberate analysis of the same arguments the State presents today." Dissent, ¶ 41. Except they are not the same arguments. If Cole's circumstances and arguments were identical to those considered in *Gibbons*, the principles of stare decisis would likely compel us to reach the same result. But the suspension of Cole's minimum fine raises a new set of circumstances and a new argument that was not present in *Gibbons*, nor in any of its progeny until now. It is this new "set of circumstances" and new argument that demonstrate *Gibbons*'s manifest error in holding that the mandatory minimum fine in § 61-8-731(3), MCA (2019), was unconstitutionally excessive *in all applications*. *See Jensen*, ¶ 12. The Dissent's sua

---

(Shea, J., specially concurring). While reiterating his position in *Gibbons* that "this matter can, and should, be resolved without wading into the constitutional issue," Justice Shea noted that "notwithstanding my dissent in *Gibbons*, I am reluctant to revisit and potentially overturn a precedent of this Court in order to resolve a theoretical dispute." *Vaska*, ¶ 32 (Shea, J., specially concurring). Unlike the scenario facing the Court in *Vaska*, the dispute in this case is no longer theoretical.

sponte invocation of severability to "surgically" excise the "unconstitutional mandatory floor" from § 61-8-731(1)(a)(iii), MCA (2019), Dissent ¶ 43, further illustrates that *Gibbons*'s facial unconstitutional holding was unworkably broad as applied to other mandatory minimum fines.

¶24 The stare decisis principles of stability, predictability, and equal treatment caution against the State's invitation to completely overrule *Gibbons*. *See Gatts*, 279 Mont. at 51, 928 P.2d at 119. We emphasize three critical aspects of *Gibbons* that remain unchanged.

¶25 First, we do not disturb *Gibbons*'s overruling of *Mingus*, which construed § 46-18-231(3), MCA, as inapplicable to mandatory fines without analysis or support. *See State v. Mingus*, 2004 MT 24, ¶ 15, 319 Mont. 349, 84 P.3d 658. *Gibbons*, ¶¶ 63-64, overruled *Mingus* on constitutional grounds, but this outcome is also supported by statutory interpretation. *Mingus* was manifestly wrong for summarily inserting an exception for mandatory fines into § 46-18-231, MCA, when the statutory text did not include one. *See Gibbons*, ¶¶ 76-77 (Shea, J., concurring in part and dissenting in part). By its plain language, § 46-18-231, MCA, applies to *all* felonies and misdemeanors, and makes no distinction between mandatory and discretionary fines. *Gibbons*, ¶ 45 (majority opinion); *Gibbons*, ¶ 76 (Shea, J., concurring in part and dissenting in part). *Mingus* inserted such a distinction without explanation or first attempting to harmonize § 46-18-231, MCA, and the mandatory minimum fine at issue. *Gibbons*, ¶ 76 (Shea, J., concurring in part and dissenting in part); *see Mingus*, ¶ 15. Doing so exceeded the Court's proper role in construing a statute, which is "simply to ascertain and declare what is in terms or in

substance contained therein, not to insert what has been omitted or to omit what has been inserted." Section 1-2-101, MCA.

¶26 Second, our reversal of *Gibbons*'s determination of facial unconstitutionality does not preclude an as-applied constitutional challenge based on the sentencing court's failure to consider the defendant's ability to pay a mandatory fine. Nor do we revisit *Yang*, where we clarified that the offender's financial resources and the nature of the burden imposed by payment of the fine are factors important to the proportionality analysis under the Excessive Fines clauses of the U.S. and Montana constitutions. *Yang*, ¶ 24. Nothing in our Opinion changes a defendant's ability to challenge a mandatory minimum fine as unconstitutionally excessive as applied to the defendant's particular circumstances, including the defendant's ability to pay. *See Yang*, ¶ 24; *Yang*, ¶¶ 29, 37 (Baker, J., concurring in part and dissenting in part).

¶27 Finally, the substitution of a statutory approach for *Gibbons*'s constitutional approach will have only negligible practical effect on indigent offenders because both approaches lead to the same practical outcome, while preserving the constitutional interpretation of § 61-8-731(1)(a)(iii), MCA (2019). Under both *Gibbons*'s constitutional analysis and the statutory approach, the sentencing court must consider the financial resources of the offender and the nature of the burden that payment of the fine will impose when determining the amount and method of payment of a fine, pursuant to § 46-18-231(3), MCA (2019). Both approaches lead to the same outcome: a defendant can never be required to *pay* the portion of a fine that they are or will be unable to pay. The

only practical difference is that the statutory approach suspends the fine, whereas the constitutional approach would prohibit the judge from imposing it in the first place. Under both approaches, however, defendants will not find themselves entangled in the criminal justice system *solely* because of their indigency.

¶28   Cole's sentence demonstrates this practical similarity. The District Court considered Cole's financial resources and the burden that paying the $5,000 mandatory minimum fine would impose on him. The District Court imposed the $5,000-minimum fine, but credited Cole for his day in jail and suspended the remaining $4,900 based on Cole's inability to pay. The District Court ordered Cole to pay a fine of $0, just as if § 61-8-731(1)(a)(iii), MCA (2019), was facially unconstitutional under *Gibbons*.

¶29   In sum, we overrule *Gibbons*'s holding that § 61-8-731(3), MCA (2019), is facially unconstitutional, but we do not disturb its overruling of *Mingus*, revisit *Yang*, or preclude future as-applied constitutional challenges. Because it is possible to harmonize the three sentencing provisions shaping Cole's sentence to give effect to each and to avoid an unconstitutional construction of § 61-8-731(1)(a)(iii), MCA (2019), we must do so. We hold that a sentencing court not only *may* impose a suspended fine on a defendant who does not have the ability to pay at the time the fine is imposed, but that § 46-18-231(3), MCA, *requires* that the fine be suspended to the extent that the defendant lacks the ability to pay. Cole's suspended $5,000-minimum fine was legally imposed because the District Court conducted the ability-to-pay analysis required by § 46-18-231(3), MCA (2019), and suspended the portion of the fine it determined Cole was unable to pay.

18

**CONCLUSION**

¶30     The District Court handled this matter exactly as § 61-8-731(1)(a)(iii), MCA (2019), and § 46-18-231(3), MCA (2019), required, and within the authority conferred upon it by § 46-18-201(2), MCA (2019).  We affirm the suspended fine as imposed by the District Court.

/S/ JAMES JEREMIAH SHEA

We Concur:

/S/ CORY J. SWANSON
/S/ BETH BAKER
/S/ JIM RICE

Justice Jim Rice, concurring.

¶31     Three justices dissented in *State v. Gibbons*, expressing serious concerns about the Court's decision.  *See Gibbons*, ¶ 79 (Rice, J., concurring and dissenting) ("the Court overturns 20 years of precedent that distinguished mandatory statutory fines from discretionary fines in order to assign a new interpretation to § 61-8-731(3), MCA (2019), so that it may strike down the new interpretation as unconstitutional").  A foremost concern was the weighty principles of stare decisis.  *See Gibbons*, ¶ 88 (Rice, J., concurring and dissenting) (The Court "overrules longstanding precedent and strikes down a long-used statute.  'Stare decisis is a fundamental doctrine that reflects this Court's concerns for stability, predictability, and equal treatment.'") (citation omitted).  Another concern was judicial self-restraint, which counselled against rendering a constitutional decision at all,

19

let alone one declaring the statute to be facially unconstitutional. *See Gibbons*, ¶ 78 (Shea, J., concurring and dissenting) ("it is the duty of this Court to avoid an unconstitutional interpretation if possible" when "§ 61-8-731, MCA, can be interpreted constitutionally"). And, concern was expressed about the Court's seeming insensitivity to the practical implications of its decision. *See Gibbons*, ¶ 89 (Rice, J., concurring and dissenting) ("Striking down a statute that has been utilized in our court system for 27 years on the ground it is facially unconstitutional is a disruption to the judiciary and also our democracy."). These concerns existed in threshold even before considering the merits of the Court's constitutional analysis, which was also challenged in dissent.

¶32     All of these concerns have been raised in the briefing in this case. The State has provided extensive argument that the holding in *Gibbons* was, for purposes of stare decisis, manifestly wrong, procedurally and substantively, and should be overturned:

> [T]he *Gibbons* Court's disregard of this Court's settled practice of not reaching constitutional questions and correctly employing principles of statutory construction has resulted in the *Gibbons* Court creating "a bad decision" that impacts both the Legislature's ability to set proportional penalties and the safety of Montana citizens. *See Gibbons*, ¶ 62. Thus, the doctrine of *stare decisis* requires this Court to overrule *Gibbons*.

Thus, we are here presented with argument that appropriately supports the requested relief—reversal of *Gibbons*—as a manifestly wrong decision which also has negatively impacted the State's ability to sentence defenders and ensure public safety.

¶33     While the Court's analysis here is not entirely consistent with the analysis I offered in *Gibbons*, and, pursuant thereto, I would have supported overturning more of that decision than the Court does here, nonetheless the Court's overturning of the holding that

20

§ 61-8-731, MCA (2019), is facially unconstitutional, Opinion, ¶ 29, corrects a significant error of *Gibbons*, and I therefore join the Court's Opinion.

/S/ JIM RICE

Justice Katherine M. Bidegaray, dissenting.

¶34 Just two years ago, in *Gibbons*, we held that the mandatory minimum fine provision of § 61-8-731(3), MCA (2019), was facially unconstitutional because, when a court exercised the discretion it was allowed under that statute to impose a fine, it was required to impose a minimum fine of $5,000 without consideration and regardless of a defendant's ability to pay. Underpinning this holding were four pertinent legal conclusions: (1) Article II, Section 22, of the Montana Constitution and the Eighth Amendment to the United States Constitution prohibit "impos[ition]" of excessive fines; (2) § 46-18-231(3), MCA, embodies these constitutional proportionality requirements applicable to the offense and offender; (3) precedent saying that § 46-18-231(3), MCA, "does not apply to mandatory fines" is no longer good law; and (4) the plain language of § 46-18-231(3) cannot be reconciled with the plain language of § 61-8-731(3). Here, instead of applying *Gibbons*' constitutional holding, the majority decides to overturn it. I dissent from this decision for numerous reasons.

¶35 At bottom, Cole's case presents a constitutional question about a different DUI punishment, § 61-8-731(1)(a), MCA (2019), which mandates imposition of a minimum

fine in all cases—a true mandatory minimum fine.[1]  The questions are whether § 61-8-731(1)(a)'s mandatory minimum fine is unconstitutional and, if so, what the proper remedy must be.[2]  Article II, Section 22, and the Eighth Amendment explicitly prohibit imposition of excessive fines.  *Gibbons*, controlling precedent, gives effect to that constitutional prohibition.  Each demands that we conclude that the mandatory minimum fine provision of § 61-8-731(1)(a)(iii), MCA (2019), is facially unconstitutional because it eliminates all discretion to impose a fine and mandates a minimum $5,000 fine amount, without consideration and regardless of a defendant's ability to pay.

¶36    Instead, the majority departs from precedent, established rules of statutory construction, and settled principles of constitutional adjudication to avoid this result. The majority frames the issue here as whether the sentencing court "*legally imposed* the $5,000 minimum fine . . . when it *suspended* the portion Cole could not pay."  This approach is flawed from the start because it construes § 61-8-731(1)(a), a mandatory DUI penalty statute, and § 46-18-201(2)(a), a discretionary sentencing statute, to allow imposition of a mandatory minimum fine and then suspension if the defendant cannot pay. This construction, however, requires a court, before suspending the fine, to *impose* an excessive fine in violation of Article II, Section 22, and the Eighth Amendment—the

---

[1] Section 61-8-731(3), MCA (2019), at issue in *Gibbons* and *Vaska*, was different insofar as imposition of the fine was discretionary but the minimum fine amount mandatory.

[2] The State argues that § 61-8-731(1)(a), MCA, "does not violate the Excessive Fines Clauses under the United States Constitution or the Montana Constitution."  Cole argues that the mandatory minimum fine provision is facially unconstitutional under both constitutions.

constitutional harm that *Gibbons* expressly forbids. The majority erroneously concludes that "suspension" of an illegal fine somehow renders it "legally imposed."

¶37 To effect its construction, the majority reconfigures the plain language of the very statutes it purports to harmonize. It reads § 46-18-231, MCA, as creating a distinction between *imposing* a fine the defendant cannot pay and requiring him *to pay* a fine he cannot pay, although the statute makes no such distinction on its face. It reads the discretionary authority granted by § 46-18-201, MCA, which provides that a court "*may* suspend execution of sentence," as mandatory, holding that the court "*must use its authority* under § 46-18-201(2)(a)" to suspend whatever portion of an excessive fine the defendant cannot pay. And it elevates a general sentencing statute, § 46-18-201(2)(a), over the specific felony DUI sentencing statute, § 61-8-731(1)(a), to attempt to avoid the constitutional consequence of a legislatively-mandated fine. The majority's "harmonizing" construction here fails for the same reason it failed in *Gibbons*—there is simply no way to give effect to these contradictory provisions without rewriting them.

¶38 Further, to affirm the District Court's "suspension" remedy here, the majority relies on *Curran*, although that case (1) did not involve a constitutional challenge to the DUI penalty statute at issue; (2) did not involve any claims that the mandatory fine was illegally imposed; (3) did not involve suspension of a fine as a means of avoiding its illegality but rather involved only the method by which an undisputedly lawfully imposed mandatory fine could be satisfied; and (4) plainly said that sentencing courts have no discretion to waive statutorily-mandated fines.

23

¶39 Finally, the majority guts *Gibbons*, undoing its rule that mandatory minimum fines unconstitutionally mandate imposition of a minimum fine amount without consideration and regardless of a defendant's ability to pay. But nothing in the law has changed since *Gibbons* was decided or since this Court applied it just seven months ago in *Vaska*. Stare decisis—a foundational element of the rule of law—requires that a precedent be "manifestly wrong" to be overturned. *Gibbons* cannot be "manifestly wrong" simply because arguments previously rejected are now embraced. The Court's abrupt reversal undermines the predictability and stability that stare decisis exists to protect. Trial courts, litigants, and practitioners are left to wonder whether constitutional doctrine will endure absent any intervening change in law.

¶40 If we follow stare decisis, apply controlling precedent, and honor our Constitution, we must construe the mandatory $5,000 floor of § 61-8-731(1)(a), MCA (2019), as unconstitutional. We may then employ a tool of judicial restraint—the severability doctrine—to make that constitutional holding workable in practice. Severing the unconstitutional floor from § 61-8-731(1)(a)(iii), MCA, leaves the remainder intact, giving effect to the Legislature's purpose of punishing DUI offenders with incarceration and a fine. Applying severability as the remedy, upon conviction, the sentencing court shall impose a fine up to and including the maximum amount the Legislature allowed for the offense, proportional to the defendant's ability to pay as required by Article II, Section 22, and the Eighth Amendment, and recognized in § 46-18-231(3), MCA. Mandatory

minimum fines that preclude consideration of a defendant's ability to pay are, and must remain, unconstitutional.

**I. Post-Imposition Suspension Authority Cannot Cure a Constitutional Defect that Arises at the Moment of Imposition**

¶41 The threshold question in this case is not how various sentencing statutes may be harmonized through procedural workarounds, but whether the Legislature may require imposition of a mandatory fine without permitting proportionality review before a fine is imposed. As Cole correctly argues, whether a sentencing statute permits a court to suspend a fine it imposes is a different question from whether the Constitution permits the court to impose the fine in the first instance. The majority collapses these distinct inquiries, treating post-imposition sentencing suspension discretion as a substitute for constitutional restrictions at sentencing.

¶42 Article II, Section 22, and the Eighth Amendment expressly prohibit imposition of excessive fines. The Montana and United States Constitutions restrict the judicial act of sentencing, not the later administrative act of collection. Section 46-18-231(3), MCA, recognizes that constitutional restriction. Conversely, § 61-8-731(1)(a), MCA (2019), expressly provides that a person convicted of a fourth or subsequent DUI "*shall be punished* by . . . a fine in an amount of *not less than $5,000* or more than $10,000," regardless of proportionality and even if the court determines the defendant cannot pay the $5,000 fine. Bypassing these conflicting constitutional and statutory mandates, the majority focuses on what comes after imposition, concluding that "suspension" of the $5,000 fine renders it "legally imposed." But the constitutional inquiry precedes, and is

independent of, any question about suspension or enforcement because, as this Court recognized in *Gibbons*, imposition of the excessive fine *is* the unconstitutional act.

¶43 Montana law does not define "impose." When a term is undefined, it is "construed according to the context and the approved usage of the language." Section 1-2-106, MCA. Black's Law Dictionary defines "impose" as "to enunciate or establish authoritatively; to command, offer, or force (something) on another or others," such as, "to impose a sentence."[3] Accordingly, at the moment the court imposes a fine the defendant cannot pay, the constitutional violation occurs and is complete. *See State v. Lane*, 1998 MT 76, ¶ 40, 288 Mont. 286, 957 P.2d 9 (a sentence is imposed when the court orally pronounces judgment).

¶44 By contrast, § 46-18-201(2)(a), MCA, authorizes a court, in some circumstances, to "suspend execution of sentence." Suspending the "execution of sentence" presupposes imposition of that sentence and cannot, therefore, supply retroactive constitutional authority to "legally impose" a mandatory minimum fine that the defendant cannot pay. Accordingly, the constitutionality of a mandatory fine is not contingent on whether the fine is subsequently collected, enforced, or "suspended." If the judge follows § 46-18-231(3), MCA, and finds the defendant is indigent, but the statute forces the judge to say the words "I fine you $5,000," the violation is complete before the judge says, "and I suspend the fine."

---

[3] *Impose*, *Black's Law Dictionary* (12th ed. 2024).

¶45 Put differently, the question whether a court may suspend execution of a sentence under § 46-18-201, MCA, is a secondary, remedial question. *See, e.g.*, *Curran*, *infra* (the court's discretionary authority to modify the payment method for a mandatory fine was implicated only because the court *imposed* the fine in the first place). By the time the majority reaches for the "remedy" of suspension, the constitutionally prohibited act—the *imposition* of an excessive fine—is already complete. Therefore, the threshold question—one the majority never squarely confronts—is whether the Legislature may mandate that sentencing courts impose a $5,000 fine without consideration and regardless of whether the fine amount is constitutionally excessive. *Gibbons* answered that question in the negative. No amount of post-imposition suspension authority can cure the constitutionally defective imposition of Cole's $5,000 fine here.

## II. The Majority's Flawed "Harmonizing" Construction

¶46 The majority's "harmonizing" approach is flawed because harmonization is meant to give effect to conflicting statutory provisions where possible; it is not a license to rewrite a mandate out of, or into, existence. It also violates numerous canons of statutory construction. We are guided by the first principle that when construing statutes, their plain language controls and we are not to insert what has been omitted or omit what has been inserted. Section 1-2-101, MCA. When specific and general provisions conflict, the specific controls over the general. Section 1-2-102, MCA. Finally, we undertake the "holistic endeavor" of statutory construction so as to account for the statute's text,

27

language, structure, and object; avoid an absurd result; and give effect to the purpose of the statute. *State v. Triplett*, 2008 MT 360, ¶ 25, 404 Mont. 476, 490 P.3d 105.

¶47 The DUI penalty at issue here, § 61-8-731(1)(a), MCA (2019), is a true *mandatory* minimum fine statute, unlike the penalty at issue in *Gibbons* and *Vaska*. By its express, plain language, it provides unconditionally that an offender "*shall be punished*" by incarceration *and* a fine "of *not less than* $5,000." It does not provide any means for a court to consider the defendant's ability to pay the fine or any discretion for the court to deviate from that mandatory range and impose a fine *less than* $5,000 if the defendant cannot pay the minimum amount.[4] Instead, it mandates that a minimum $5,000 fine *shall* be imposed in all circumstances, regardless of whether it is constitutionally excessive. For these reasons alone, § 61-8-731(1)(a)(iii)'s mandatory minimum fine provision, on its face, violates the Article II, Section 22, and Eighth Amendment prohibitions on imposition of excessive fines.

¶48 To avoid this constitutional holding, the majority reconfigures other sentencing statutes in its attempt to make § 61-8-731(1)(a) permissive, not mandatory. First, the majority construes § 46-18-231, MCA, to regulate only the *payment* of a fine, allowing a court to impose an unconstitutional fine but only "sentence an offender to pay" what, if any, amount he can afford. By reading § 46-18-231 this way, the majority attempts to

---

[4] As discussed later, the discretionary gateway that *Gibbons* and *Vaska* dissenters relied on to permit their "harmonizing" construction of § 61-8-731(3) in those cases is not present here. Yet the majority does not address the truly mandatory nature of § 61-8-731(3) or explain why *Gibbons* must be overruled to construe a statute not at issue there, despite the State's argument that *Gibbons* is distinguishable for this reason.

28

resurrect the artificial distinction between imposition and payment of a fine that we put to bed in *Gibbons* and which, for reasons explained below, *Curran* cannot credibly revive. As Article II, Section 22, and the Eighth Amendment make clear, imposition of an excessive fine is the constitutional violation. Moreover, as recognized in *Gibbons*, § 46-18-231 "clearly and plainly" requires that, *whenever* a court "*impose*[*s*] *a fine*," it must do so "only in accordance with" § 46-18-231(3), MCA, which requires the court to conduct an ability-to-pay inquiry and forbids imposing a fine a defendant cannot pay. Section 46-18-231(1), (3), MCA (emphasis added); *Gibbons*, ¶ 45 (majority); *Gibbons*, ¶ 71 (Shea, J., dissenting). There is no authority apparent on the face of § 46-18-231 that would permit a court, after determining that the defendant cannot pay, to impose an excessive fine but not actually require the defendant to pay it. The statute says the court cannot *impose* a fine the defendant cannot *pay* in the first instance.

¶49 In the same vein, the majority's contention that a defendant "does not pay a suspended fine" is a distinction without a constitutional difference. Article II, Section 22, and the Eighth Amendment do not say, "excessive fines shall not be collected" or "excessive payments shall not be required"; they say excessive fines *shall not be imposed*. Besides, at the moment the court orally pronounces sentence, the fine becomes a command of the court, a binding judicial disposition. Subsequently conditionally "suspending" execution of that sentence does not render it constitutionally compliant, nor does it make the debt go away. Instead, the unconstitutional fine remains as a contingent liability

enforceable upon revocation of probation. This inescapable fact is evident in the District Court's oral pronouncement of Cole's sentence:

> I will *impose the $5,000 fine*, . . . give him credit against it for $100 [for jail time served, and] *suspend* the remainder of *the fine of $4,900* based on his *successful completion of the conditions of probation*.

If Cole's probation is revoked, the "suspended" "*fine of $4,900*" is no longer stayed and becomes immediately and fully enforceable as part of the original, unconstitutional sentence. *See* § 46-18-203(7), MCA (sentencing on revocation of probation). The oversimplified notion that a defendant "does not pay a suspended fine" ignores these finer points of law.

¶50 Next, the majority construction ignores the plain text of §§ 46-18-201(2)(a) and 61-8-731(3), MCA. One statute says that the defendant "*shall be punished*" by a fine of "*not less than* $5,000"; the other says that a sentencing court "*may* suspend execution of sentence." The majority, however, reverses and repurposes these statutes, essentially permitting a court to fine a defendant *less than* $5,000 by holding that the court "*must use its authority under § 46-18-201(2)(a)*" to suspend whatever portion of the mandatory fine the defendant cannot pay. Thus, in disregarding the Legislature's plain intent, the majority has now written a *suspension mandate* into an expressly discretionary general sentencing statute and effectively written a *permissive punishment* into a mandatory-minimum-fine penalty statute, thereby converting the mandatory fine into one "the defendant does not pay." This construction not only omits what has been inserted in § 46-18-201(2)(a) ("may" becomes "must") but inserts what has been omitted in § 61-8-731(1)(a) ("shall" becomes

30

"may"). Opinion, ¶¶ 14, 27-29. Some members of the majority have previously criticized such impermissible construction. *See Gibbons*, ¶¶ 86-87 (Rice, J., with Baker, J., dissenting) (citing *Gibbons*, ¶ 68 (Shea, J., dissenting)).

¶51 Further, the majority construction elevates the "general" discretionary sentencing statute, § 46-18-201, over the "narrow and specific" penalty statute, § 61-8-731(1)(a), demanding exercise of discretionary "suspension" authority to override a mandatory punishment. This inversion violates § 1-2-102, MCA, because it allows a general suspension provision to override the specific mandatory penalty enacted for repeat DUI offenders. Some members of the majority have previously criticized such impermissible construction. *See Gibbons*, ¶¶ 69, 74-77 (Shea, J., dissenting) (citing *Gibbons*, ¶¶ 86-87 (Rice, J., with Baker, J., dissenting)).[5]

¶52 As we recognized in *Gibbons*, statutory mandates that are contradictory by their own terms simply cannot be reconciled. The "harmonizing" construction the majority employs here fails for the same reason it failed in *Gibbons*, and more: it creates an artificial imposition/payment distinction not present on the face of § 46-18-231; it impermissibly and illogically inserts into § 61-8-731(1)(a) discretion, upon imposition of the mandatory minimum fine, to suspend up to the amount a defendant cannot pay, the result of which may run outside the statutorily mandated range of punishment; and it makes discretionary

---

[5] The majority construction also disregards other jurisprudential maxims such as "the law neither does nor requires idle acts" nor "requires impossibilities" because it requires sentencing courts to impose a fine regardless of whether it is excessive, and then to suspend it if it is excessive. *See* §§ 1-3-222, -223, MCA.

suspension authority under § 46-18-201(2)(a) a mandatory curative measure for an excessive fine. Yet nothing in this "harmonizing" construction squarely addresses the controlling legal question presented: whether the Legislature may require imposition of a mandatory fine without consideration and regardless of a defendant's ability to pay. This is not constitutional avoidance; this is sidestepping the constitutional inquiry the Court is obligated to resolve.

### III. *Curran* Does Not Supply Authority for the Majority's Construction

¶53    To support its treating statutory suspension authority as constitutionally curative, the majority relies on *Curran*. But nothing in *Curran* purported to expand judicial authority to alter the Legislature's mandatory fine scheme; in fact, doing so would have undermined *Curran*'s premise that the mandatory fine was legal in the first place.

¶54    Curran appealed his mandatory $600 fine for a first offense DUI, imposed under § 61-8-722(1), MCA (2019). Critically, unlike Cole, Curran did not challenge the legality of the mandatory fine, which we took great pains to note, and so we held that the mandatory minimum fine, under *Mingus* and progeny, was *legally imposed. Curran*, ¶¶ 3-6, 20-21, 26 (citing *Mingus*, ¶ 12; *State v. Ingram*, 2023 MT 118, ¶ 9, 402 Mont. 374, 478 P.3d 799; and *State v. Reynolds*, 2017 MT 317, ¶ 19, 390 Mont. 58, 408 P.3d 503). In so holding, we acknowledged and reiterated *Mingus*' rule: "a sentencing court does not have discretion to waive a statutorily mandated fine." *Curran*, ¶ 24 (citing *Mingus*, ¶ 15).

¶55    Upon holding that the mandatory fine was *legally imposed* under *Mingus*, et al., we turned to Curran's "enforcement" argument: even though the court had no discretion as to

the *amount* of a mandatory fine, it nevertheless had discretion "to assess a defendant's ability to pay when considering *the method of payment*." *Curran*, ¶ 23 (emphasis added). Curran argued that § 46-18-231(3) authorized the court "to impose an alternative to satisfy [his] obligation for the $600 fine" by "substitut[ing] a different 'method of payment' for the dollar-for-dollar fine it ordered." *Curran*, ¶¶ 10, 23. Curran did not argue that he was not obligated to pay the fine; he argued that he was not obligated to pay it dollar-for-dollar.

¶56    We agreed, holding that a court has discretion "when it comes to the *method of payment* a defendant may use to satisfy a mandatory fine." *Curran*, ¶ 24 (emphasis added). Because § 61-8-722(1) did not specifically limit the court's discretion under § 46-18-201(2)(a), MCA, the sentencing court could fashion a means "to satisfy the mandatory fine via alternative methods to a dollar-for-dollar repayment plan." *Curran*, ¶¶ 25-27, 30. We remanded "for consideration of alternative methods authorized by statute *for satisfying the fine*." *Curran*, ¶ 30 (emphasis added). We also explained that

> whether a sentence *must be imposed* on a defendant because the Legislature has *codified a mandatory punishment* is not the same as a court's discretion regarding how defendants may *satisfy* mandatory sentences when the statutes also afford that discretion. Our line of precedent regarding a sentencing court's *obligation to impose* a mandatory fine does not prevent sentencing courts from determining *the method of satisfying a fine once imposed*.

*Curran*, ¶¶ 27-28 (emphasis added).

¶57    Clearly, *Curran* was a narrowly-crafted ruling about satisfaction of a lawful fine—not authority to "suspend" an *illegally imposed* excessive fine. While we casually said that § 46-18-201(2)(a) authorizes "suspend[ing] execution of sentence," we did not explain what that means or remand with instruction that the municipal court "suspend" Curran's

33

$600 fine, which Curran remained obligated to pay. *Compare Curran*, ¶¶ 28, 30, *with* Opinion, ¶ 12. Nor could we, given our holding that the fine was legally imposed because, under *Mingus*, "a sentencing court does not have discretion to waive a statutorily mandated fine." *Curran*, ¶ 24. The majority ignores this facet of *Curran*, instead only cherry-picking a "rule" that we did not actually apply.

¶58 Moreover, though we expressly held that § 46-18-201(2)(a), MCA, provides a court *discretionary* authority to order alternative methods of satisfying a lawful fine, the majority now converts § 46-18-201(2)(a) suspension authority into a mandate, holding that, if the court determines the defendant cannot pay "the full mandatory fine," it "*must use its authority* under § 46-18-201(2)(a), MCA, to suspend the mandatory fine to the extent that the defendant lacks the ability to pay." Nothing in *Curran* suggests that suspension authority can validate a fine that is unconstitutional at the moment of imposition. To read *Curran* that way disregards its reaffirmation that courts lack discretion to waive statutorily mandated fines. The plain language of § 46-18-201(2)(a) and our reading of that statute in *Curran* squarely contradict the majority's construction today.

¶59 Finally, even Cole recognizes that *Curran* is distinguishable. Despite the majority's claim that he "concedes" *Curran* applies, Cole actually argues the opposite:

> *Gibbons* makes clear . . . that the *upfront imposition of the mandatory-minimum DUI fine—not just the subsequent enforcement of it—is facially unconstitutional*. Mr. Cole's fine cannot survive the Court's ruling in *Gibbons*. *Curran* stands for the proposition that a sentencing court *possesses discretion to suspend payment of a fine* under § 46-18-201(2)(a). *But Curran does not authorize imposition of a facially unconstitutional fine that is suspended pending successful completion of probation*.

34

(Emphasis added.) Cole is correct. By applying *Curran*, the Court perpetuates the artificial, Court-created distinction between imposing a debt a defendant cannot pay and enforcing a debt a defendant cannot pay. *Compare Curran*, ¶¶ 32, 47-48 (McKinnon, J., dissenting); *Curran*, ¶ 31 (Shea, J., concurring); *Curran*, ¶ 24 (citing *Mingus*); *Gibbons*, ¶¶ 63-64. We did not order the mandatory debt undone in *Curran*; we simply remanded for the court to consider alternative ways for Curran *to pay* the debt. Here, the majority attempts a similarly awkward application of discretionary sentencing statutes to the mandatory fine in Cole's case, avoiding the simple fact that imposition of an excessive fine is illegal in the first instance.

## IV. The Majority Gives No Compelling Reason to Depart from Stare Decisis

### A. Opinions in *Gibbons* and *Vaska*

¶60 The majority's decision to overrule *Gibbons* rests on the premise that it was "manifestly wrong." That is a demanding standard. The record here does not approach it.

¶61 We decided *Gibbons* in 2024 with a 4-3 majority. There, we construed §§ 46-18-231(3) and 61-8-731(3), MCA (2019), as each containing a legislative mandate: -231(3) mandates that a court must conduct a proportionality inquiry and cannot impose a fine the defendant cannot pay and -731(3) mandates that, when a fine is imposed, it must be at least the mandatory minimum amount, even if constitutionally excessive. These contradictory mandates were irreconcilable and could *not* be construed to give effect to each, and only one mandate—§ 46-18-231(3)—was "tethered" to a fundamental right. *Gibbons*, ¶¶ 56, 60-64, 66.

35

¶62   The fundamental disagreement in *Gibbons* was whether §§ 46-18-231 and 61-8-731(3) both could be construed in harmony as constitutional, thereby avoiding exercising our power of judicial review. The majority said no; the dissenters said yes. But even the dissenters disagreed amongst themselves as to how the statutes could be harmonized. Justices Rice and Baker believed that § 46-18-231(3) was a "general" statute governing consideration of a defendant's ability to pay discretionary fines subordinate to the "narrower and specific exception" of § 61-8-731(3), which precluded such consideration as a deliberate policy choice. *Mingus* embodied this reading and was therefore correct. They also contended that § 61-8-731(3) was not facially unconstitutional merely because it lacked an express mechanism to assess proportionality because the Legislature already built proportionality considerations into the mandatory *range* of fines the court could impose under § 61-8-731(3). *Gibbons*, ¶¶ 79-90.

¶63   Justice Shea, dissenting alone, rejected this approach. First, he contended that § 46-18-231 applies to all convictions where a fine may be imposed, making no exception for mandatory fines, and that it codified the constitutional inquiry required to ensure proportionality of the fine imposed to the defendant's ability to pay it. *Gibbons*, ¶¶ 71-72 (Shea, J., dissenting) (citing *Gibbons*, ¶¶ 45, 50 (majority)). Second, he argued that Justice Rice's construction was flawed because it arbitrarily elevated the DUI mandate over the ability-to-pay mandate rather than giving effect to both. Finally, Justice Shea maintained that the summary holding in *Mingus*—that ability-to-pay inquiries simply "do not apply" to mandatory fines—was "manifestly wrong" because it was a winner-take-all

36

interpretation that ignored the court's duty to harmonize conflicting statutes. *Gibbons*, ¶¶ 68-78 (Shea, J., dissenting). Justices Rice and Baker, in turn, disagreed with Justice Shea's construction because, by requiring imposition of the minimum fine amount only if it was affordable, it effectively eliminated "the mandatory nature of the fine." *Gibbons*, ¶ 87 (Rice, J., with Baker, J., dissenting). The majority rejected Justice Shea's construction for the same reason—it impermissibly made the mandatory minimum fine discretionary. *Gibbons*, ¶¶ 52-53.

¶64     We decided *Vaska* with a similar 4-3 majority. Three justices expressly affirmed *Gibbons* and declined to overrule it despite the State's insistence. The three dissenters thought *Gibbons* should be overturned because § 46-18-231(3), MCA, could be read to permit the court, upon determining the defendant could not afford the mandatory minimum fine amount, to exercise its discretion under the "permissive" § 61-8-731(3), MCA (2019), *not to impose the fine at all*. Justice Shea joined the majority in applying *Gibbons* and declining to overrule it because we could simply vacate the illegally-imposed mandatory minimum fine, remand for a proportionality inquiry as required, and wait to see how the court exercised its discretion under § 61-8-731(3) to either impose the fine or not. *Vaska*, ¶¶ 30-32 (Shea, J., specially concurring).

## B. Majority's Flawed Reversal Rationale

¶65     "Although stare decisis is not a rigid doctrine that forecloses the reexamination of cases, when necessary, weighty considerations underlie the principle that courts should not lightly overrule past decisions." *Certain v. Tonn*, 2009 MT 330, ¶ 19, 353 Mont. 21, 200

P.3d 384 (citation omitted). "Stare decisis [is] the means by which we ensure that the law will not merely change erratically but will develop in a principled and intelligible fashion" and remain "founded in the law rather than in the proclivities of individuals." *Vasquez v. Hillery*, 474 U.S. 254, 265-66, 106 S. Ct. 617, 624 (1986). Accordingly, we may only credibly overrule prior decisions proven to be "manifestly wrong." *State v. Running Wolf*, 2020 MT 24, ¶ 22, 398 Mont. 403, 457 P.3d 218; *McDonald v. Jacobsen*, 2022 MT 160, ¶ 30, 409 Mont. 405, 515 P.3d 777. That is, the precedent must be so plainly and obviously wrong that continued application would perpetuate a clear error of law.

¶66     Our precedent identifies guideposts for determining whether a prior decision is "manifestly wrong" and should be overruled. We examine whether the rule has proven unworkable in practice; whether intervening legal developments have undermined its doctrinal foundation; whether the factual premises underlying the decision have materially changed; whether reliance interests have developed around the rule; and whether the prior interpretation clearly misread the constitutional or statutory text. *See, e.g.*, *McDonald*, ¶ 30 (stare decisis is fundamental to the rule of law and is grounded in the need for stability, predictability, and equal treatment; it requires "special justification" beyond disagreement with prior reasoning); *Running Wolf*, ¶ 22 (precedent may be overruled only if "manifestly wrong"); *Certain*, ¶ 19 (courts should not "lightly overrule past decisions"; "stare decisis provides the 'preferred course'"); *see also Janus v. AFSCME*, 585 U.S. 878, 916, 138 S. Ct. 2448, 2478-79 (2018) (identifying quality of the decision's reasoning, workability of the rule, consistency with other decisions, developments since the decision,

and reliance interests as stare decisis considerations); *Kimble v. Marvel Entm't, LLC*, 576 U.S. 446, 455-56, 135 S. Ct. 2401, 2409 (2015) (emphasizing reliance, changed circumstances, and legal development as factors).

¶67 None of those conditions exists here. *Gibbons* has not proven unworkable. The State has presented no evidence of problems with *Gibbons*' workability. The Legislature has not amended the relevant statutes in response. No intervening constitutional decision has altered Excessive Fines analysis. And the majority identifies no textual misreading so clear that continued adherence would perpetuate obvious legal error, nor any intervening change in statutory text, constitutional doctrine, or factual predicate. Absent such developments, disagreement with prior reasoning—however sincere—does not satisfy the demanding "manifestly wrong" standard. At bottom, the majority identifies no recognized basis for overruling precedent. *See McDonald*, ¶ 30 ("to justify a departure from stare decisis, the [party] must show that [the Court's decision] was 'manifestly wrong,' rather than merely one of several 'viable alternatives'").

¶68 Beyond the above reasons, there are numerous other problems with the majority's decision to overrule *Gibbons*. First, *Gibbons* involved a different DUI punishment. This matters because, to avoid *Gibbons*' constitutional holding, the *Gibbons* and *Vaska* dissenters all relied exclusively on the fact that the sentencing statute involved there, § 61-8-731(3), MCA (2019), was "permissive." By providing that a defendant "shall be sentenced . . . to a term of imprisonment . . . *or be fined* . . . or both," § 61-8-731(3) created a discretionary gateway crucial for the dissenters' construction—the sentencing court

39

could avoid imposing an excessive fine by *choosing to not impose any fine at all* under the "permissive" penalty statute. Chief Justice Swanson called this an "off-ramp to . . . avoid . . . striking down" § 61-8-731(3) as unconstitutional. *Vaska*, ¶¶ 36-45, 75 (Swanson, C.J., with Rice, J., dissenting) (noting that, in *Gibbons*, Justice Shea had "correctly interpreted" § 61-8-731(3), which "grants the court discretion to impose a fine" and that "the statute in *Gibbons* was not a mandatory minimum fine, because [it] gave a judge the discretion to not impose the fine"); *Vaska*, ¶ 98 (Baker, J., dissenting) (noting that § 61-8-731(3) "makes the imposition of a fine discretionary"); *Vaska*, ¶¶ 31-32 (Shea, J., specially concurring) (the "theoretical dispute" whether the court "can or must fine Vaska $5,000" on remand would "be rendered moot if [it] determines Vaska can't pay the fine anyway"); *Gibbons*, ¶ 73 (Shea, J., dissenting) (§ 61-8-731(3) "includes a mandatory minimum fine, should the sentencing court choose to impose one").

¶69    But, for the *Gibbons* and *Vaska* dissenters who now comprise the majority today, that discretionary gateway is not available here because § 61-8-731(1)(a) is a true mandatory minimum punishment *mandating imposition of a minimum $5,000 fine* in every case. There is no circumstance where the court cannot impose at least a $5,000 fine, and thus no "off-ramp" to avoid invalidating the statute. The majority does not acknowledge, much less address or resolve, this distinguishing fact and instead overrules *Gibbons* outright.

¶70    The State devotes most of its appellate briefing, again, to arguing that *Gibbons* was manifestly wrong and should be overturned because *§ 61-8-731(3)* was a discretionary

fine statute. For example, the State says that "§ 46-18-231 is *only reconcilable* with" § 61-8-731(3) "because *that specific provision* imposes a *discretionary fine*." (Emphasis added.) But that is not the penalty provision at issue here. It is unclear, then, how the dissenters' *Gibbons/Vaska* rationale translates to their rationale in Cole's case, where we have no such "permissive" penalty. It is further unclear why it is necessary to overrule *Gibbons* in order to construe *§ 61-8-731(1)(a)*, a markedly different penalty statute than the one at issue in that case. If anything, the constitutional tension is clearer here than it was in *Gibbons* because the mandatory minimum fine in *Gibbons* was constitutionally problematic *if* imposed; it is problematic here in every instance because its imposition is unavoidable. The majority does not explain how a statute that affords less discretion to avoid constitutional injury can be more constitutionally sound.

¶71 Second, three of the four *Gibbons/Vaska* dissenters fundamentally disagreed with overruling *Mingus*, believing their construction of §§ 46-18-231 and 61-8-731(3) preserved *Mingus*' rule that statutorily mandated fines are not subject to a sentencing court's discretion. *See Gibbons*, ¶ 86 (Rice, J., with Baker, J., dissenting) ("our decision in *Mingus* is not inconsistent with the statute and should not be overruled"); *Vaska*, ¶¶ 75, 93 (Swanson, C.J., with Rice, J., dissenting) (overruling *Gibbons* would properly "restore" *Mingus*); *compare Gibbons*, ¶¶ 76-77 (Justice Shea joining majority decision to overrule *Mingus*, albeit on different grounds). *But see Curran*, ¶¶ 20-21 (which the majority applies here although *Curran* cites and applies *Mingus*' now-overturned rule). But, despite previously calling for "restoration" of *Mingus*—a case they said *Gibbons* erroneously

41

overruled—the *Gibbons/Vaska* dissenters now acquiesce, and *Mingus* remains bad law. At least we now all agree that § 46-18-231, MCA, applies to mandatory fines after all. Opinion, ¶¶ 11, 24-25, 27, 29.

¶72 Further, three of the four *Gibbons/Vaska* dissenters once vehemently disclaimed that § 46-18-231, MCA, embodies constitutional protections. *See Vaska*, ¶¶ 61-75 (Swanson, C.J., with Rice, J., dissenting) (*Gibbons* impermissibly "elevated" § 46-18-231 into a "codification and enactment" of the Excessive Fines Clause, a claim that "lacks in legitimacy what it possesses in chutzpah"); *Gibbons*, ¶¶ 79-90 (Rice, J., with Baker, J., dissenting) (proportionality is built into the DUI penalty range by the Legislature and the § 46-18-231 ability-to-pay inquiry is inapplicable to mandatory fines); *compare Gibbons*, ¶ 71 (Justice Shea concurring with the majority that § 46-18-231 mandates a constitutional ability-to-pay inquiry). Setting that point aside, they now join Justice Shea, accepting a statutory construction previously outright rejected by everyone but him in *Gibbons*. Again, at least we now all agree that § 46-18-231(3), MCA, embodies the federal and state constitutional requirements that a fine must be proportional to the offense *and the offender*. Opinion, ¶¶ 11, 13, 24, 26-29.[6]

---

[6] In *Vaska*, Chief Justice Swanson called for overruling *Gibbons* and *Yang* because "their interpretation of § 46-18-231(3), MCA, [was] manifestly wrong" because the statute did not embody constitutional protections. *Vaska*, ¶¶ 55, 87, (Swanson, C.J., with Rice, J., dissenting); *accord Vaska*, ¶ 96 (Baker, J., dissenting). If so, how can the majority credibly simultaneously *maintain Gibbons*' constitutional construction of § 46-18-231 *and* overrule *Gibbons*' constitutional holding giving effect to the § 46-18-231 constitutional mandate? Opinion, ¶ 26 (keeping *Gibbons*' underpinning, *Yang*, ¶ 24, intact).

¶73 Finally, despite claiming that *Gibbons* is "manifestly wrong," the majority fails to show *how* beyond offering only a previously-rejected alternative statutory construction. Discarding *Gibbons*' holding—that the DUI fine at issue there was facially unconstitutional because it required a court, when imposing the fine, to impose the mandatory minimum amount without consideration and regardless of the defendant's ability to pay—is particularly suspect given the absence of any discretionary "off-ramp" in § 61-8-731(1)(a), the previous fundamental points of disagreement between majority members, and the majority's manifestly incorrect statutory construction.

¶74 As we said in *Vaska*, ¶¶ 17-20, 21-23, *Gibbons* was the product of careful consideration, thoughtful reasoning, and comprehensive and deliberate analysis of the same arguments the State presents today. The articulated reason for discarding *Gibbons*' constitutional holding is no more than the losing argument in *Gibbons* itself, which now, with no intervening change in the law, is the decided "winner" picked by the new majority of this Court. Opinion, ¶ 18 (the sentencing court's "suspension" authority "belies" *Gibbons*' conclusion that the court cannot "modify a mandatory fine"); *compare Gibbons*, ¶¶ 68, 72-73 (Justice Shea dissenting alone); *Gibbons*, ¶ 87 (Rice, J., with Baker, J., dissenting) (rejecting Justice Shea's construction); *Gibbons*, ¶¶ 52-53 (majority rejecting Justice Shea's construction). The majority decision demonstrates no manifest legal error and instead reflects only a shift in interpretive approach, not any intervening change in law or fact.

43

¶75 Applying our precedent requires holding that: (1) § 61-8-731(1)(a)(iii), MCA (2019), unconstitutionally mandates imposition of a minimum fine without consideration and regardless of a defendant's ability to pay; (2) Cole's $5,000 mandatory minimum fine was therefore illegal because the court had to impose it even though he could not pay it; and (3) the District Court did not cure the constitutional violation by later "suspending" the illegally imposed excessive fine. Instead of following the law to this conclusion, the majority erases it. With *Gibbons'* constitutional rule discarded, the majority "harmonizes" sentencing statutes to mandate imposition of a minimum fine the defendant cannot pay and then mandate "suspension" of that fine to erase its illegality. This is not a more legally sound conclusion than the one reached in *Gibbons*; in fact, it defies settled rules of statutory construction and produces results those canons are designed to prevent. Because the majority offers no compelling or principled reason to overrule *Gibbons*, I dissent from the decision to do so.

## V. Severability: A Principled Exercise in Judicial Restraint

¶76 While the majority attempts to "save" the mandatory minimum fine provision of § 61-8-731(1)(a), MCA (2019), through a strained "harmonizing" construction, the doctrine of severability offers a more principled and legally sound path. Severance is a restraint on judicial power.[7] This Court has long held that, if an invalid part of a statute is

---

[7] Severability "reflects the confined role of the Judiciary in our system of separated powers" and "manifests the Judiciary's respect for [the Legislature's] role by keeping courts from unnecessarily disturbing a law apart from invalidating the provision that is unconstitutional." *Barr v. Am. Ass'n of Political Consultants*, 591 U.S. 610, 626-27, 140 S. Ct. 2335, 2351 (2020).

severable from the rest, the constitutional portions may stand while the unconstitutional sections are rejected. *Mont. Automobile Ass'n v. Greely*, 193 Mont. 378, 399, 632 P.2d 300, 311 (1981); *White v. State*, 233 Mont. 81, 93, 759 P.2d 971, 978 (1988).[8] A statute is not destroyed in its entirety because of one improper provision unless that provision is so essential that the Legislature would not have passed the law without it. *Greely*, 193 Mont. at 399-400, 632 P.2d at 311-12. The fundamental defect here is that the statute mandates a $5,000 fine without consideration and regardless of the defendant's ability to pay—an act prohibited by Article II, Section 22, of the Montana Constitution, the Eighth Amendment, and the controlling constitutional interpretation of § 46-18-231(3), MCA. This defect is surgically remediable by excising the unconstitutional mandatory floor.

¶77 The State's argument that we should instead look to the general penalty provisions of § 46-18-213, MCA, to fill the void is a distraction from our clear duty.[9] That statute applies only when "no penalty is otherwise provided," yet § 61-8-731(1)(a), MCA (2019),

---

[8] Federal law likewise favors a strong presumption of severability. *See, e.g.*, *Alaska Airlines, Inc. v. Brock*, 480 U.S. 678, 686, 107 S. Ct. 1476, 1481 (1987); *Barr*, 591 U.S. at 624 n.5, 629-30, 140 S. Ct. at 2347, 2352-53; *Nat'l Fed'n of Indep. Bus. v. Sebelius*, 567 U.S. 519, 587-88, 132 S. Ct. 2566, 2608 (2012).

[9] We may, however, reasonably construe the State's argument for application of § 46-18-213 as a remedial argument—the State contends that if we "strike" the unconstitutional minimum floor, there must be a mechanism by which the sentencing court can impose *some fine in some amount* proportional to the defendant's ability to pay. Even if the parties do not formally argue severability, they argue the constitutionality of a statute, and we are therefore free to remedy the constitutional problem at hand. We are not so strictly constrained by party arguments or lack thereof on appeal. *See, e.g.*, *State v. Knowles*, 2025 MT 107, ¶ 17, 422 Mont. 70, 569 P.3d 184; *Linder v. Smith*, 193 Mont. 20, 29-30, 34, 629 P.2d 1187, 1192, 1195 (1981); *McBroom v. Mont. Bd. Per. Appeals*, 2025 MT 64, ¶ 14 n.2, 421 Mont. 243, 566 P.3d 518; *Mont. Dem. Party v. State*, 2020 MT 244, ¶ 12, 401 Mont. 390, 472 P.3d 1195.

provides a comprehensive and specific penalty structure that survives even without its unconstitutional floor. Under the principles articulated in *Sheehy v. Public Employees' Retirement Div.*, 262 Mont. 129, 133, 864 P.2d 762, 765 (1993), and *Finke v. State ex rel. McGrath*, 2003 MT 48, ¶ 25, 314 Mont. 314, 65 P.3d 576, our analysis must begin by looking for stated legislative intent favoring severability. The history of the DUI Act, dating back to 1955, shows that for decades the imposition of fines under Montana's DUI sentencing statutes was entirely discretionary. The presence of severability clauses in the original Act and a subsequent major amendment provides the evidence *Greely* requires—that the law-making body intended for constitutional portions of the Act to be salvaged rather than see the entire legislative scheme fail.[10]

¶78 Furthermore, as we clarified in *Williams v. Bd. of Cnty. Comm'rs*, 2013 MT 243, ¶ 63, 371 Mont. 356, 308 P.3d 88, and reaffirmed in *State v. Theeler*, 2016 MT 260, ¶ 11, 385 Mont. 196, 381 P.3d 543, the absence of a severability clause in a specific amendment does not preclude our power to excise an offending provision. So long as the remaining provisions are complete and capable of fulfilling the overarching legislative intent—which in this context is to punish DUI offenders with both incarceration and financial sanctions—the Act must be sustained. *Accord Newville v. Dep't of Family Servs.*, 267 Mont. 237, 255, 883 P.2d 793, 804 (1994) (exercising severability to save a statutory scheme despite a constitutional violation in one of its parts). Here, removing the unconstitutional mandatory $5,000 floor leaves the offense classification, the mandatory

---

[10] *See* 1955 Mont. Laws ch. 263, § 157; 1983 Mont Laws ch. 698, § 6.

term of incarceration, and the statutory maximum fine of $10,000 intact—a maximum the Legislature has already determined is appropriate for this offense; excising the floor does not disturb that legislative judgment.

¶79 Ultimately, the choice is between judicial restraint and judicial revision. Severance is restraint on judicial power; the majority's approach—rewriting a mandatory fine statute to make it optional in practice—is not. The majority's "harmonizing" construction preserves unconstitutional text while effectively nullifying its mandatory force through a procedural "suspension" mandate and goes beyond our authority under judicial canons of construction. By contrast, severance, exercised as a legislatively-approved remedy upon constitutional invalidation, removes only what the Constitution forbids while respecting the Legislature's design to the fullest extent possible. It ensures that the fine imposed is legal and final at the moment of oral pronouncement, fulfilling the requirement for finality and stability in the rule of law. *Accord* § 46-18-101(3)(a), MCA ("sentencing and punishment must be certain, timely, consistent, and understandable").

¶80 Severance does not create a new sentencing scheme. The offense classification remains unchanged. The mandatory term of incarceration remains intact. The statutory maximum fine of $10,000 remains intact. Only the unconstitutional mandatory $5,000 floor is excised. By excising the mandatory minimum fine of § 61-8-731(1)(a), MCA (2019), a sentencing court shall impose a fine it determines the defendant is or will be able to pay, up to and including the statutory maximum, after a formal proportionality inquiry under § 46-18-231(3), MCA, as our Constitution requires. This approach removes only

47

what the Constitution forbids, leaving undisturbed the remainder of the Legislature's design.

**Conclusion**

¶81 The majority and I do not reach the same immediate result. While the majority suggests we reach a common end, our paths are fundamentally irreconcilable. The majority's approach affirms a sentence that "imposes" an excessive fine and then stays its execution, leaving the defendant with a $4,900 suspended debt—a Sword of Damocles that remains a contingent liability punishing indigency. This construction does not "harmonize" the law; it creates a doctrinal hybrid that holds an unconstitutional fine over a defendant's head as a condition of their freedom.

¶82 By contrast, my approach ensures that the court obeys the constitutional commands of Article II, Section 22, and the Eighth Amendment by *imposing* only a final, legal fine that the defendant can actually pay after a meaningful proportionality analysis. Because § 61-8-731(1)(a)(iii), MCA (2019), completely forecloses this required inquiry by mandating imposition of a $5,000 fine in every case—regardless of whether the defendant can pay it—the mandatory minimum fine provision is unconstitutional on its face. Adhering to stare decisis and exercising judicial restraint requires us to *sever* the unconstitutional mandatory floor rather than reconstruct the statute through a procedural workaround. The severance approach respects the Legislature's intent to fine DUI offenders while ensuring that the punishment is not excessive and that the fine imposed is legal and final at the moment of imposition.

¶83    Accordingly, I would reverse imposition of the $5,000 fine.  I would remand with instructions that the District Court, having already conducted the required proportionality inquiry under § 46-18-231(3), MCA, impose a final, legal fine consistent with the proportionality determination already made, which the record reflects is satisfied by the $100 credit for time served, and strike the $4,900 "suspended" "fine" from the written judgment.  Only this approach provides the finality required by the Constitution and the stability demanded by the rule of law.

/S/ KATHERINE M BIDEGARAY

Justices Ingrid Gustafson and Laurie McKinnon join in the dissenting Opinion of Justice Katherine M. Bidegaray.

/S/ INGRID GUSTAFSON
/S/ LAURIE McKINNON